545 So.2d 476 (1989)
STRICKLAND-COLLINS CONSTRUCTION, a Joint Venture, Appellant,
v.
BARNETT BANK OF NAPLES, Appellee.
No. 88-02783.
District Court of Appeal of Florida, Second District.
June 21, 1989.
Louis S. Amato and Jeffrey R. Becker of Amato, Anderson & Nickel, Naples, for appellant.
Leo J. Salvatori of Quarles & Brady, Naples, for appellee.
*477 ALTENBERND, Judge.
Strickland-Collins Construction, a joint venture composed of Strickland Construction, Inc., and William M. Collins Co., Inc., appeals a summary judgment in favor of the Barnett Bank of Naples concerning a negligence claim for lender liability. We affirm because the claim involves only economic loss and the litigants were parties to a contract which allocated these risks of loss adversely to Strickland-Collins.
In April 1985, Strickland-Collins entered into a building contract with JRL Development, Inc., to construct a project known as The Village Falls in Naples, Florida. The contract contemplated the construction of fifteen buildings at a cost in excess of $2,000,000.
In order to finance this project, the developer entered into a construction loan agreement on May 1, 1985, with the Barnett Bank of Naples. Strickland-Collins signed this construction loan agreement as general contractor. It made frequent references to the general contractor and specifically stated that:
The general contractor has joined in the execution of this Construction Loan Agreement and does hereby acknowledge the terms and conditions of this Construction Loan Agreement and does agree to be bound thereby.
Under the agreement, the bank required substantial documentation to establish that the loan funds were actually utilized on the project. While it appears that the bank intended these provisions merely to protect itself and to assure that there was adequate security for the loan, the general contractor argues that these provisions also created a duty in negligence to protect the general contractor from misapplication of funds. The general contractor alleged that funds were misdirected by the owner to other projects after the funds were provided by the bank and, thus, there were insufficient funds to pay for the final work which the general contractor performed.
The general contractor did not sue the bank for breach of the construction loan agreement. Presumably, the general contractor chose not to sue the bank for breach of contract because the contract contains a broad "immunity" clause which states:
Lender shall not be liable to third parties such as the general contractor ... for services, labor or materials employed upon ... the land ..., and further as to such third parties lender shall be under no obligation to adhere to the requirements hereunder imposed as conditions for the disbursement of loaned funds which are expressly intended to be for the sole and exclusive benefit of lender.
Typically, a lender is sued by an unpaid contractor who alleges the lender exercised excessive control and effectively became a joint venturer. See Chotka v. Fidelco Growth Investors, 383 So.2d 1169 (Fla. 2d DCA 1980). In this case, the general contractor takes the opposite approach and argues that the lender should be liable because it had an obligation to exercise greater control over the project and the owner's disbursement of funds. This court has previously recognized that a lender may be liable, at least to an owner, for improper payments to a general contractor when the lender had knowledge of subcontractors' claims of lien. Kalbes v. Cal. Fed. Sav. & Loan Ass'n, 497 So.2d 1256 (Fla. 2d DCA 1986). It is unclear whether the Kalbes decision recognized a theory in negligence as well as theories based upon breach of contract and violation of section 713.06(3), Florida Statutes (1983).
Subsequent to the Kalbes decision, the supreme court has held that a party to a contract may not pursue a claim in tort solely for economic losses unless the party breaching the contract has committed a tort which is distinguishable from or independent of the breach of contract. Fla. Power & Light Co. v. Westinghouse Elec. Corp., 510 So.2d 899 (Fla. 1987); A.F.M. Corp. v. S. Bell Tel. & Tel. Co., 515 So.2d 180 (Fla. 1987). In the absence of personal injuries or property damage to property outside the contract, Florida will not create a duty in tort to permit recovery of economic losses where the litigants have allocated the various risks of their bargain by contract. The general contractor in this *478 case did not allege a separate tort or a claim based upon violation of any Florida statute. Instead, the general contractor was simply seeking to create a duty in tort, based upon the parties' contract, to recover economic losses which were not recoverable directly under the parties' contract.
Accordingly, the summary JUDGMENT is AFFIRMED.
RYDER, A.C.J., and LEHAN, J., concur.